IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL NIEWIEDZIAL, | |
| Plaintiff, | |
| v. | Case No. 21-cv-01593 |
| GERARDO GUZMAN and ALMA MARTIJA, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Niewiedzial brings this case against Defendants Dr. Gerardo Guzman and Dr. Alma Martija for deliberate indifference to his medical needs while in the Defendants' care at DuPage County Jail. He brings a claim under 42 U.S.C. §1983 and a state-law claim for intentional infliction of emotional distress. [21]. Defendants move to dismiss the First Amended Complaint as time-barred and for failure to relate back pursuant to Federal Rule of Civil Procedure 15(c)(1)(B). For the reasons stated herein, Defendants' Motion to Dismiss [34] is denied.

**BACKGROUND**

The following factual allegations are taken from the First Amended Complaint (FAC) (Dkt. 21) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

At the age of sixteen, Plaintiff Michael Niewiedzial developed bone spurs, a serious medical condition. (Dkt. 21 at ¶ 11). The spurs require consistent medical care, including trimming to prevent infection and further pain. (*Id.* at ¶ 12). For more

1

than thirty years Niewiedzial cared for his feet with over-the-counter treatments as directed by his doctor. (*Id.* at ¶ 13).

From January 2017 to June 2019, Niewiedzial was detained at DuPage County Jail ("DuPage County") in Wheaton, Illinois. (*Id.* at ¶ 2). Upon entering DuPage County, Niewiedzial informed Defendants of his medical condition and existing treatment plan. (*Id.* at ¶ 14). He was placed in the care of both Dr. Alma Martija and Dr. Gerardo Guzman, who began treating him in early January 2017. (*Id.* at ¶¶ 15, 16). As a detainee, Niewiedzial was prohibited from possessing his usual treatment tools and was therefore completely dependent on the jail doctors for treatment. (*Id.* at ¶ 18). Despite knowing this, Defendants did not provide Niewiedzial the sustained care necessary for his condition. (*Id.* at ¶ 20). This lack of treatment continued for ten months, until approximately November 2, 2017. (*Id.* at ¶ 21). At that time, Dr. Guzman shaved the calluses on Niewiedzial's feet. (*Id.* at ¶ 23). However, that treatment did not resolve Niewiedzial's chronic pain. (*Id.* at ¶ 24). Therefore, Niewiedzial continued to submit Inmate Health Services Requests for more regular treatments. *Id.*

On or about May 17, 2018, after about six months of care, Dr. Guzman performed a procedure without Niewiedzial's consent that required him to cut into Niewiedzial's right toe. (*Id.* at ¶ 25). After the procedure, Dr. Guzman informed Niewiedzial that he removed a diabetic ulcer from his right foot. (*Id.* at ¶ 26). To control the bleeding caused by the procedure, Dr. Guzman cauterized the wound. (*Id.*

2

at ¶ 27). Cauterization was required and repeated for months, leading to eleven total procedures and significant and continued pain for Niewiedzial. (*Id.* at ¶ 28).

On August 9, 2018, Niewiedzial submitted a grievance related to the continuous bleeding of his right foot and Dr. Martija's refusal of care when Guzman was unavailable. (*Id.* at ¶ 29). The request was denied. (*Id.*). On August 14, 2018, in response to the August 9th grievance, a jail representative told Niewiedzial that he would receive medical treatment from the jail physicians who would determine whether he would receive off-site treatment. (*Id.* at ¶ 30). However, the August 9 grievance was denied before Niewiedzial received treatment. *Id.* For the following three months, Niewiedzial submitted approximately thirteen Inmate Health Services Request Forms requesting treatment of his bone spurs, calluses and bleeding. (*Id.* at ¶ 31).

In October 2018, the wound on Niewiedzial's right foot became infected. After submitting another request, Niewiedzial was told he would be seen by an outside physician. (*Id.* at ¶ 32). He was treated at Northwestern Medicine Central DuPage Hospital ("CDH") on October 30, 2018. (*Id.* at ¶ 35) He was sent back to DuPage County with an antibiotic prescription and regimen. (*Id.*). However, Dr. Martija ended the course of antibiotics two weeks earlier than prescribed. (*Id.* at ¶ 38). Niewiedzial's foot again became infected, requiring further treatment at CDH on November 23, 2018. (*Id.* at ¶ 39). Again, Martija ended the course of antibiotics two weeks earlier than prescribed. (*Id.* at ¶ 42). The infection returned a third time and

3

resulted in amputation of Niewiedzial's right big toe on January 3, 2019. (*Id.* at ¶¶ 44, 45).

Following the procedure, Niewiedzial remained in the care of both Drs. Guzman and Martija. Between January 24, 2019 and April 1, 2019, he submitted an additional five Inmate Health Services Request Forms for the continued pain in his right foot and lack of treatment. (*Id.* at ¶¶ 47–48). Every grievance request was denied and eventually closed. (*Id.* at ¶¶ 49–53). Drs. Guzman and Martija ignored his requests causing Niewiedzial to develop additional sores and blisters, leading to an eventual infection on his left foot. (*Id.* at ¶ 54). As a result of Defendants' lack of care, Niewiedzial was again referred to CDH for treatment of this infection on May 21, 2019. (*Id.* at ¶ 55). This lack of treatment continued through Niewiedzial's stay at DuPage County. (*Id.* at ¶ 56). After his transfer out of DuPage County, the infection led to the amputation of all the toes on his left foot. (*Id.* at ¶ 57.)

Plaintiff sent his *pro se* complaint through the prison mail system on March 4, 2021. (Dkt. 1). The Court received his complaint on March 23, 2021 and deemed it filed on May 10, 2021. (Dkt. 8). The *pro se* complaint outlined the issues he encountered with DuPage County and the doctor Defendants. *See* (Dkt. 1). It also included many of his medical records from DuPage County and Northwestern. (*Id.* at 9–24). Court-appointed counsel filed Plaintiff's FAC on October 10, 2021. (Dkt. 24).

## ANALYSIS

### I. Standard

4

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## II. The Prison Mailbox Rule

Before ruling on whether the FAC is time-barred by the statute of limitations, the Court must determine when Niewiedzial filed his original complaint. "The prison mailbox rule . . . provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." *Hurlow v. United States,* 726 F.3d 958, 962 (7th Cir. 2013). This rule exists because "the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015) (citing *Houston v. Lack*, 487 U.S. 266, 271 (1988)). This rule applies to all district court filings except in "exceptional situations." *Id.* at 858; *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001). Defendants do not argue that any "exceptional situations" exist here which would bar the application of the prison mailbox rule.

Defendants assert that the Court should either use March 23, 2021 (when the initial Complaint was received) or May 10, 2021 (when the initial Complaint was deemed filed) to determine if the Complaint is time-barred by the statute of limitations. (Dkt. 34 at 5). But given that Plaintiff was incarcerated when he mailed the initial complaint, the "prison mailbox rule" squarely governs. Accordingly, this Court considers March 4, 2021, the date the complaint was entered into the prison mail system, the correct filing date for purposes of its statute of limitations analysis.

### III. Statute of Limitations

Applying the March 4, 2021 filing date, this Court next turns to whether Niewiedzial's' claims are barred by the statute of limitations. Defendants argue that

6

Niewiedzial's claims related to his right foot are barred by the statute of limitations because Niewiedzial's claim accrued at the time of his right toe amputation in January 2019, requiring that Niewiedzial file his lawsuit by January 2021. (Dkt. 34 at 4.)

A two-year statute of limitations applies to claims brought under 42 U.S.C § 1983 in Illinois. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (adopting Illinois' statute of limitations for personal injury claims of two years for Section 1983 claims). Federal law governs the accrual date of a Section 1983 action. *See Wilson v. Groze*, 800 F. Supp. 2d 949, 954 (N.D. Ill. 2011). The statute of limitations begins to run the day an injury accrues unless a plaintiff experiences a continuing violation. *Heard v. Sheahan*, 253 F.3d 316, 319–20 (7th Cir. 2001). "For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Further, "[d]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition," and typically "ends only when treatment is provided, or the inmate is released." *Jervis v. Mitcheff,* 258 Fed. Appx. 3 at *5–6 (7th Cir. 2007). Because the statute of limitations is an affirmative defense, this Court will deny a motion brought on that ground unless Plaintiff pleads himself out of court by alleging facts establishing his complaint is time-barred. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009).

Plaintiff argues that the FAC characterizes a continuing violation regarding his treatment on his feet for the entire time he was in care of the Defendants, not just the treatment of his right foot. (Dkt. 39 at 7). This Court agrees.

The FAC lists a number of separate violations throughout his entire time at DuPage County. The FAC alleges a failure to treat the Plaintiff's bone spurs starting in 2017, (Dkt. 21 at ¶¶ 21–23), his ignored and denied grievance regarding poor medical care filed on April 1, 2019, three months after his amputation, (*id.* at ¶ 53), and the continued denial of medical care through May 2019 by Drs. Guzman and Martija, (*id.* at ¶ 56). Neither the original nor the FAC assert that the alleged deliberate indifference ended the day his right toe was amputated in January 2019; rather, both Complaints assert that the constitutionally inadequate care continued through May 2019. Therefore, Niewiedzial's claim accrued on the last date of the offense (May 31, 2019) or alternatively, the day he left DuPage County (June 13, 2019). Either date renders Plaintiff's March 4, 2021 filing timely. Thus, the statute of limitations does not time-bar Plaintiff's lawsuit.

## IV. Relation Back

Defendants argue that the FAC's allegations related to his left foot must be dismissed because they do not relate back to Niewiedzial's initial *pro se* complaint concerning his right foot. (Dkt. 34 at 6). Plaintiff counters that the initial complaint contained sufficient allegations regarding the overall treatment of both his feet, and that his original complaint must be construed liberally under the standard applied to *pro se* complaints.

8

If an amended complaint relates back to the original complaint, then the amended complaint supersedes the original complaint. *Scott v. Chuhak & Tecson, P.C.,* 725 F.3d 772, 782 (7th Cir. 2013). Further, the amended pleading relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In determining whether an amended pleading relates back, "district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

Plaintiff is correct that his original complaint alleged lack of care to both his feet. *See e.g.,* (Dkt. 8 at 4). ("Dr. Guzman and Dr. Matija neglected necessary treatment of my feet for 6 months."). The allegations in the FAC expand on the allegations from the original complaint by offering a more detailed description of Plaintiff's treatment while in the care of Defendants. And the FAC adds a claim of intentional infliction of emotional distress that directly relates to core issue, deliberate indifference to his medical condition. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (holding that a plaintiff may assert a new claim that arises out of the conduct, transaction, or occurrence set out in the original pleading). In making these assessments the Court is guided by the maxim that *pro se* complaint liberally, holding it to a less stringent standard than lawyer-drafted pleadings. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

Defendants seemingly concede that "any claim for deliberate indifference against Guzman and Martija relating to Plaintiff's left foot would have to have been filed by June 13, 2021 (at the latest) to be timely filed." (Dkt. 34 at 7). Since the Complaint was filed on March 4, 2021, the initial complaint was timely filed.

### V. Conclusion

For the reasons stated, Defendants' Motion to Dismiss [34] is denied.

E N T E R:

Dated: June 15, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge